# Pennsylvania Gas Company, Appellant, *v.* Public Service Commission et al.

*Public Service Company Law — Public Service Commission — Natural gas companies—Supply of gas—Distribution.*

Where a natural gas company has the right to supply natural gas to a certain territory, the obligation to furnish such gas, if reasonably obtainable, is correlative to such right and may be enforced by the Public Service Commission.  For such purpose the commission may reasonably require the company to extend its lines, within such territory, and the provisions of the Act of May 29, 1885, P. L. 29, are not repugnant thereto.

The company, or the commission, may, in the event of a supply of gas insufficient to serve all classes of consumers, discriminate in favor of domestic as against industrial users.  Where the company itself is making use of a large quantity of gas industrially, the commission may, for the benefit of domestic consumers, require the discontinuance of such industrial use, if it is reasonably possible to secure a satisfactory substitute fuel.

The company or the commission cannot discriminate between domestic consumers, and declare the use of gas for cooking or water heating to be superior to other forms of domestic heating.  In case

of general shortage the quantity reasonably to be used by domestic consumers may be limited.

If a greater quantity of gas is not reasonably obtainable, and the present supply is not sufficient for present domestic use, the commission may not require the company to extend its lines into additional or annexed territory even for domestic use. Such order requires the expenditure of the company's capital without the hope of an adequate return and amounts to confiscation. It is unreasonable and not in conformity with the law.

Natural gas companies are to be distinguished from other public service companies supplying the public with a product which may be manufactured or taken from a practically inexhaustible supply. Where the figures in the report of the Public Service Commission as to the proportionate amount of natural gas used for industrial purposes are incorrect and misleading, the report of the commission will be reversed, and the record be remanded to the commission with directions to take additional testimony as to the amount of gas used for industrial purposes during the winter or peak load months throughout the appellant company's field; as well as the amount of gas used industrially by the company during such months; and to reconsider the matter and determine whether a discontinuance during these months would afford such an additional supply of gas for domestic use as would justify the extension of the company's lines.

Argued May 6, 1924. Appeal, No. 95, April T., 1924, by Pennsylvania Gas Company, from order of the Public Service Commission of the Commonwealth of Pennsylvania, in re Complaints of L. W. Mathias et al. v. Pennsylvania Gas Company, Complaint Docket, Nos. 4643, 5174, 5175, 5176, 5177, 5323 to 5337 inclusive, 5486, 5487, 5494. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Petition to the Public Service Commission to require Pennsylvania Gas Company to extend its mains.

The facts are stated in the opinion of the Superior Court, and in the following report and order of the Public Service Commission:

These are complaints against respondent's refusal to supply the complainants with natural gas for light and

heat, or other purposes. The respondent is resisting them and bases its refusal to comply with the request of the complainants on three grounds. (a) That some of the complainants are not within the district which it is chartered to serve. (b) That it is only required, by the Natural Gas Act of 1885, to supply consumers along its lines and within its district, and that none of the complainants are so located. (c) That it has exhausted its efforts to either produce or purchase sufficient gas to adequately supply in cold weather the consumers now on its lines. We will consider these suggestions in the order stated.

(a) This ground of refusal is supported by the contention that the chartered territory of the corporation was limited to the City of Erie as it existed at that time, and when the city subsequent to the respondent's incorporation enlarged its limits as to take in some of these complainants, who are now within the present confines of the city, it did not and could not thereby enlarge the chartered territory of the respondent or impose upon it the obligation to supply gas to persons, corporations or associations residing in the annexed territory. It is a sufficient answer to this contention to point out that the respondent on January 14, 1886, enlarged its territory of production and of supply, and its pipe lines and branches, in the manner provided by section 5, Act of May 29, 1885, P. L. 29, and set forth the same as follows:

"The said corporation intends to provide (produce) natural gas wherever the same may be found in the County of Erie, and in any part of the Counties of Warren, McKean, Elk and Forest, not embraced in its charter, or previous certificate of enlargement."

"The said corporation intends to supply natural gas for consumption to all persons, partnerships and corporations desiring the same, and to the public in the Villages of Irvinton, Pittsfield, Garland, Spring Creek and Columbus Station, and the Boroughs of Youngsville

and Columbus, in the County of Warren: and in the Cities of Corry and Erie, and the Boroughs of Union and Waterford, and the *villages lying conveniently near to the lines of pipes hereafter to be constructed as hereinafter set forth to be supplied from said pipes or branches therefrom, in the said County of Erie.*"

"The said corporation also intends to construct a line or lines of pipe from a point in the Township of Wetmore, in the County of McKean, by way of the Townships of Sheffield, Mead, Glade, Conewango, Broken Straw, Pittsfield, Spring Creek and Columbus, in the County of Warren, to the City of Corry, in the County of Erie, and thence by as nearly a direct line as possible to the City of Erie, in the said County of Erie; and such branch lines in the County of Warren and in the County of Erie as shall be necessary to reach the *above stated places of supply.*"

In the foregoing quoted paragraph from the respondent's certificate of enlargement, the italicizing is ours. It is to be observed that in this certificate the respondent designated, inter alia, the entire County of Erie as a district in which it intended to produce natural gas. It also designated all villages in Erie County, convenient to its line of pipes and branches, as places where it intended to supply gas for consumption; also that it intended to construct as nearly as possible, a direct line from the City of Corry to the City of Erie, and such branch lines in the County of Erie as shall be necessary to "reach the above stated places of supply."

If the territory annexed to the City of Erie comprised a village, then it was one of the places in Erie County which respondent included in its territory of supply and which it undertook to serve by the construction of lines of pipes and branches necessary for that purpose. A village is defined as "a collection of houses collocated after a regular plan in regard to streets and lanes." It is manifest from the testimony that the annexed territory did comprise a collection of houses collocated after

a regular plan of streets and alleys. If the language used in the certificate of enlargement can be said to be ambiguous as to the territory in which gas was to be supplied for consumption, it is subject to the general rule of construction that every public grant, privilege of franchise is to be liberally construed in favor of the public and strictly against the grantee. In this connection it may be stated that respondent has voluntarily extended its pipe lines into this annexed territory, and for many years last past has been supplying gas therein to the public. Even if such extension of its service were ultra vires as now contended by respondent, it is neither mala prohibitia nor mala in se, and respondent should not be heard at this late date to raise this question. The commission upon due consideration of the evidence and the law applicable thereto, finds and determines that the annexed territory to the City of Erie, is within the district which respondent is required to serve.

(b) The contention that an applicant for service must be both along respondent's lines and within its district, is untenable. The transportation and supply of natural gas for public consumption is declared by the act of respondent's creation to be a public use. It is provided in the first section of the act that corporations organized thereunder shall be formed "for the purpose of producing, dealing in, transporting, storing, and supplying natural gas to such persons, corporations or associations within convenient connecting distance of its line of pipe as may desire to use the same." The corporation is given the right of eminent domain for laying pipe lines for the transportation and distribution of its product. It is a fact within common knowledge that these companies, by virtue of their right of eminent domain, construct supply lines, for the transportation of gas, through districts where no gas is distributed or intended to be distributed; also where there are no consumers to take the gas. The right to appropriate private property for public use can be justified only on the ground of public ne-

cessity, and when the legislature granted natural gas companies this extraordinary power, it evidently intended to safeguard the public, within reasonable limits, in its right to make use of the corporation's facilities thus authorized to be constructed on and over private property. It is unnecessary to determine in these complaints whether the language "along their lines and within their respective districts" quoted by respondent from section 10 of the act, is susceptible of the interpretation that any person, corporation or association, along their lines of transportation, but not within any especially designated district in which gas is to be distributed, is entitled to demand and require the corporation to furnish a supply of gas for consumption. In any event the language quoted from this section is to be considered in connection with the language used in section 1, and when so considered, the commission's jurisdiction over natural gas companies to require reasonable extensions to be made by them will be the same as over public utilities. When there is an apparent conflict between different sections of an act of assembly, and the act can be interpreted so as to give effect to both sections, such interpretation must be adopted. However, if consideration were to be given only to the language found in section 10 of the act, then the general rule for construing statutes would apply, which requires, if possible, that effect must be given to all the words employed. If respondent's interpretation of the phrase "along their lines and within their respective districts" were adopted, effect would not be given to all of the words used. By substituting the disjunctive "or" for the conjunctive "and" which is permissible, effect can be given not only to all of the words, but the meaning of the phrase will be clarified and this language brought into harmony with the other provisions of the act declaring its purposes and requirements. In the opinion of the commission there is nothing in the act, under which respondent is incorporated, to prevent the commission from requiring the company

to make reasonable extensions of its service so as to supply consumers applying therefor, whether they are directly or immediately on the company's existing supply line or not, and we so find and determine.

(c) The question of whether the respondent has or can secure an adequate supply of natural gas for all consumers desiring to make use of the same, is not free from difficulty. The testimony indicates that the gas consumed for domestic purposes in the City of Erie in extreme cold weather is about four times the average consumption in the summer months. The respondent was furnishing about as much gas for industrial purposes in the city as it was for domestic uses, but in recent years its industrial consumption has been cut to approximately sixty per cent of that supplied to domestic consumers.

The respondent also has been using large quantities of gas for fuel to operate its gas compressors. Upon inquiry made, at the time of the oral argument, it was stated that the amount of gas used for this purpose would approximate fifty per cent of the average amount supplied domestic consumers in Erie, until within the last year when it was cut to about twenty-five per cent by the use of fuel oil in part for the operation of the company's compressors. Oil is a more expensive fuel than natural gas, but if necessary to adequately serve its patrons with natural gas the respondent should operate its compressors entirely with some other fuel. It should use a substitute fuel for this purpose, even if more expensive, than to require its patrons to supplement their supply of gas with a substitute fuel. It is also in evidence that gas is being wastefully used, and it is within the power and duty of the company to shut off the gas from consumers who make such use of it. The respondent now has in force a rule approved by this commission, that gas may and will be denied to industrial consumers when required to make full delivery to domestic consumers. If this rule is enforced, and if the

respondent will enforce the law against the wasteful use of the gas by the users thereof, and will also if necessary turn in to its supply lines the gas used to operate its compressors, the commission finds and determines from the evidence that there will be an ample supply for all domestic consumers in the City of Erie, desiring to make use of the same.

The respondent, under the Public Service Company Law, may classify its consumers, and in the event of a shortage in gas may deny its use to an entire class of consumers. This may be held, in the interest of the public welfare, not to be an unjust discrimination. Non constat that it can furnish gas to some consumers and refuse it to others in the same class without offending against the Constitution and statutory laws of this Commonwealth as well as against a bead-roll of appellate court decisions against unjust discrimination. In view of the failing supply of natural gas, it is possible that the only solution of the problem is to make an equitable distribution of the available supply among all the consumers of the specified class who make application for the same, and if the supply thus furnished will not meet the needs of a consumer he will either have to substitute in whole or in part his requirements with some other fuel.

Upon due consideration of the record presented, the commission finds that each of the extensions asked for in these complaints is a reasonable one that should be made by the respondent, and in accordance with the foregoing findings and determination, the commission will make an order in each of these cases sustaining the complaint, and directing the service to be installed as therein prayed for.       Respondent appealed.

*Error assigned* was, among others, the report and order of the commission.

*W. Pitt Gifford,* and with him *J. E. Mullin,* for appellant.—The extension of the limits of the City of Erie by the municipal authorities did not impose upon the appellant company the obligation to serve consumers not included in its charter territory: Pennsylvania R. R. Co. v. Canal Commissioners, 21 Pa. 9; Appeal of the City of Pittsburgh, 115 Pa. 4; Allied Associations of West Phila. v. Phila. Rapid Transit Co. et al., 5 P. C. R. 314; Passyunk Avenue Business Men's Association v. The Public Service Commission, 73 Pa. Superior Ct. 242; Allied Associations of West Phila. v. Public Service Commission, 70 Pa. Superior Ct. 13; Bethlehem C. W. Co. v. Public Service Commission, 70 Pa. Superior Ct. 499; Scranton v. Scranton Rys. Co., P. U. R., 1915 C, 890; Newcomer et al. v. Citizens Water Co., P. U. R., 1918 A, 788; Bethlehem v. Allentown, 275 Pa. 110; Detroit United Ry. v. Michigan, 242 U. S. 238; Georgia Ry. & Power Co. v. Decatur, 43 Pa. Superior Ct. 613.

A natural gas company incorporated under the Act of May 29, 1885, P. L. 29, is obliged to render service only to consumers within its district and along its lines: Beck v. Pennsylvania Gas Company, 18 Dist. Rep. 245.

The order of the commission was unreasonable and not in conformity with law.

*C. C. Eaton* and *S. L. Gilson,* and with them *J. M. Sherwin,* for intervening appellees.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Asst. Counsel, for the Public Service Commission.

OPINION BY KELLER, J., October 13, 1924:

Upon full consideration of the report of the commission in connection with the evidence produced in this case, we have arrived at the following conclusions:

1. Appellant has the right under its charter and extensions thereto to supply natural gas to the territory annexed to the City of Erie and to enter upon the streets

566 PENNA. GAS CO., Appel., *v.* PUB. SER. COM. et al.

and highways of such annexed territory for that purpose. The obligation to furnish gas, if reasonably obtainable, to consumers in such territory is correlative to such right and may be enforced by the Public Service Commission.

2. For that purpose the commission may reasonably require the company to extend its lines, within such territory. The provisions of the Act of May 29, 1885, P. L. 29, are not repugnant thereto.

3. The company, or the commission, may, in the event of a supply of gas insufficient to serve all classes of consumers, discriminate in favor of domestic as against industrial users.

4. Where the company itself is making use of a large quantity of gas industrially, the commission may, for the benefit of domestic consumers, require the discontinuance of such industrial use, if it is reasonably possible to secure a satisfactory substitute fuel.

5. We are not satisfied that under existing laws the company or the commission may discriminate as between domestic consumers, and declare the use of gas for cooking or water heating to be superior to other forms of domestic heating. In case of general shortage the quantity reasonably to be used by domestic consumers may be limited.

6. If a greater quantity of gas is not reasonably obtainable, and the present supply is insufficient for present domestic use, the commission may not require the company to extend its lines into additional or annexed territory even for domestic use. Such an order requires the expenditure of the company's capital without the hope of an adequate return and amounts to confiscation; is unreasonable and not in conformity with law.

7. The fact that the supply of natural gas is dependent on nature and limited and cannot be increased by the work of man necessarily distinguishes natural gas companies from public service companies supplying the

public with a product which may be manufactured or taken from a practically inexhaustible supply.

8. The figures in the commission's report as to the proportionate amount of natural gas used for industrial purposes are incorrect and misleading. There is no reason why the company should not furnish to industrial consumers gas not required for domestic use. In the summer months the domestic use falls off and the industrial consumption increases. Figures and percentages based on such industrial consumption when the supply is greater than required for domestic use should have no place in our calculations.

9. Calculations with respect to the industrial use of gas during the winter or peak load months should be based on the consumption in the whole field of the company in Pennsylvania and not merely the City of Erie. We are unable to determine from the evidence in the record, whether if the industrial use of gas were reasonably curtailed during the winter months, throughout the whole of the appellant company's field of supply in Pennsylvania, there would be sufficient gas to justify the extension of appellant's lines here sought for by the petitioners. It is undisputed that under present conditions the supply of gas is insufficient to meet the requirements of present domestic consumers; and that it is not reasonably possible to increase the supply of gas sufficient to meet such present requirements, much less enlarge them by extensions into new territory. The law does not require the company to expend additional capital in the extension of its lines in order that it may divide among an increased number of users a diminishing supply of gas already insufficient for present domestic use in the winter months. On the other hand, if by curtailing the industrial use throughout the whole field during the winter months, the increased supply for domestic use would justify such extension it should be made. On the evidence now before us, we are not impressed by the theory that a rigid enforcement by the

company of its rules as to domestic use would effect a saving in gas which would warrant the extensions sought. Such action, to have the desired effect, would place on the company a burden of expense in connection with the investigation of the use of gas by domestic consumers, and the enforcement of penalties against offenders of such rules, incommensurate with the results to be obtained.

The report of the commission is accordingly reversed and the record is remanded to the commission with directions to take additional testimony as to the amount of gas used for industrial purposes during the winter or peak load months throughout the appellant company's field; as well as the amount of gas used industrially by the company itself during such months; and to reconsider the matter and determine whether a discontinuance of such uses during said months would afford such an additional supply of gas for domestic use as would justify the extension of the company's lines prayed for, in the light of the conclusions above announced.